**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BANK OF AMERICA, N.A.,

        Plaintiff,

  vs.

FALCON POINT ASSOCIATION, *et al.*,

        Defendants.

SFR INVESTMENTS POOL 1, LLC,

        Counter/Cross-Claimant,

  vs.

BANK OF AMERICA, N.A.,

        Counter/Cross-Defendant.

Case No.: 2:16-cv-00814-GMN-CWH

**ORDER**

Pending before the Court is the Second Motion for Summary Judgment, (ECF No. 110), filed by Plaintiff Bank of America, N.A. ("Plaintiff"). Defendants Red Rock Financial Services, LLC ("Red Rock"), SFR Investments Pool 1, LLC ("SFR"), and Falcon Point Association ("HOA") filed Responses, (ECF Nos. 121, 122, 123), to which Plaintiff filed Replies, (ECF Nos. 126, 127).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 117), filed by SFR. Plaintiff filed a Response, (ECF No. 120), and SFR filed a Reply, (ECF No. 128).

Also pending before the Court are Plaintiff and SFR's Motions for Partial Summary Judgment, (ECF Nos. 65, 68). Plaintiff and SFR filed Responses, (ECF Nos. 76, 84), as well as Replies, (ECF Nos. 85, 90), to the respective Motions.

For the reasons discussed herein, Plaintiff's Second Motion for Summary Judgment, (ECF No. 110), is **GRANTED**; Plaintiff and SFR's Motions for Partial Summary Judgment, (ECF Nos. 65, 68), are **DENIED**; and SFR's Second Motion for Summary Judgment, (ECF No. 117), is **GRANTED in part** and **DENIED in part**.[1]

## I. BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 5649 Woods Crossing Street, Las Vegas, Nevada, 89148 (the "Property"). In 2008, Mark Cowens and Melanie Giese ("Borrowers") purchased the Property by way of a loan in the amount of $212,199.00 secured by a deed of trust ("DOT") recorded on September 16, 2008. (Deed of Trust, Ex. A to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 65-1). The initial beneficiary under the DOT was Mortgage Electronic Registration Systems, Inc. ("MERS"), who later assigned the DOT to Plaintiff on June 15, 2012. (Assignment of Deed of Trust, Ex. B to Pl.'s MSJ, ECF No. 65-2).

On March 1, 2010, HOA, through its agent Red Rock, recorded a lien for delinquent assessments against the Property. (Delinquent Assessments Lien, Ex. C to Pl.'s MSJ, ECF No. 65-3). Red Rock later recorded a notice of default and election to sell on January 31, 2011, and a subsequent notice of foreclosure sale on June 6, 2014. (*See* Notice of Default, Ex. D to Pl.'s MSJ, ECF No. 65-4); (Notice of Foreclosure, Ex. E to Pl.'s MSJ, ECF No. 65-5). At the foreclosure sale on August 1, 2014, HOA foreclosed on its lien and sold the Property to SFR, who recorded the foreclosure deed on August 6, 2014. (Foreclosure Deed, Ex. F to Pl.'s MSJ, ECF No. 65-6).

Plaintiff filed the instant Complaint on April 11, 2016, asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title against all

---

[1] SFR's Motion for Relief, (ECF No. 77), pursuant to Rule 56(d) is **DENIED as moot** in light of the instant Order and SFR's filing of its Second Motion for Summary Judgment, (ECF No. 117).

Defendants; (2) Breach of NRS § 116.1113 against HOA and Red Rock; (3) wrongful foreclosure against HOA and Red Rock; and (4) injunctive relief against SFR. (*See* Compl. ¶¶ 23–86, ECF No. 1). On June 20, 2016, SFR filed an Answer containing counterclaims and crossclaims against Plaintiff and Borrowers for quiet title and injunctive relief. (*See* Answer ¶¶ 37–51, ECF No. 22).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiff moves for summary judgment on its quiet title and declaratory relief claims asserting that *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), cert. denied, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017), compels the Court to hold that the HOA foreclosure sale did not extinguish Plaintiff's DOT. (Pl.'s Mot. Summ. J. ("MSJ") 2:16–22, ECF No. 110). Plaintiff alternatively argues that summary judgment is warranted because both Borrowers and Plaintiff properly tendered the superpriority HOA lien. (*Id.* 6:20–10:10).

SFR seeks summary judgment on the basis that *Bourne Valley* does not control, Plaintiff lacks standing to assert a due process challenge, and Plaintiff is otherwise not entitled to an equitable remedy. (SFR's Mot. Summ. J. ("SFR's MSJ") 11:11–18:24, 22:15–23:9, ECF No. 117). SFR also opposes Plaintiff's Motion arguing, *inter alia*, that homeowners cannot, as a matter of law, satisfy an HOA's superpriority lien, Plaintiff's tender contained impermissible conditions rendering it invalid, and SFR obtained the Property as a bona fide purchaser. (SFR's Resp. to Pl.'s MSJ 10:2–19:17, 19:20–22:16, 28:6–30:19, ECF No. 122).

The Court first turns to the parties' arguments concerning the applicability of *Bourne Valley* to the instant case.[2]

### A. Constitutionality of the Foreclosure

In *Bourne Valley*, the Ninth Circuit held that NRS § 116.3116's "'opt-in' notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution."

---

[2] In light of the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018), the Court ordered the parties to file supplemental briefs addressing the interplay between that decision and *Bourne Valley*, (ECF No. 129). Plaintiff and SFR timely filed their respective briefs, (ECF Nos. 131–32).

*Bourne Valley*, 832 F.3d at 1156. Specifically, the Court of Appeals found that by enacting the statute, the Nevada legislature acted to adversely affect the property interests of mortgage lenders and was thus required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1159. The statute's opt-in notice provisions therefore violated the Fourteenth Amendment's Due Process Clause because they impermissibly "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Id.*

In holding that NRS § 116.3116's opt-in notice scheme is facially unconstitutional, the Ninth Circuit rejected the appellant's argument that NRS § 107.090 should be read into NRS § 116.31168(1) to cure the constitutional deficiency. *Id.* Specifically, the appellant argued that the "incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request." *Id.* The Ninth Circuit, interpreting Nevada law, held that this interpretation "would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." *Id.*

Subsequent to *Bourne Valley*, a court in this District certified the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not request notice, prior to the amendment that took effect on October 1, 2015." *Bank of New York Mellon v. Star Hill Homeowners Ass'n*, No. 2:16-cv-02561-RFB-PAL, 2017 WL 1439671, at *5 (D. Nev. Apr. 21, 2017). On August 2, 2018, the Nevada Supreme Court issued its decision on the certified question in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018). The Nevada Supreme Court explicitly "decline[d] to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-

in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253.  Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court).  Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)).  In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.*  "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation.  The Ninth Circuit's conclusion that NRS § 116.3116 violated lenders' due process rights was explicitly premised upon the Ninth Circuit's interpretation of state law.  Specifically, the Ninth Circuit concluded the notice

provisions of NRS 107.090 are not incorporated into NRS 116.31168. However, because the Nevada Supreme Court has since rejected the Ninth Circuit's interpretation by holding that the notice provisions of NRS 107.090 are incorporated into NRS 116.31168, *Bourne Valley* is no longer controlling authority with respect to § 116.3116's notice provisions.

Accordingly, to the extent Plaintiff seeks to quiet title based upon the Ninth Circuit's holding in *Bourne Valley*, the Court rejects this theory. The Court now turns to Plaintiff's remaining arguments in favor of its claims.

### B. Tender of the Superpriority Portion of HOA's Lien

Plaintiff argues that either Borrowers' tender of the HOA superpriority lien, or alternatively, Plaintiff's tender of the same, preserved Plaintiff's status as holder of the first DOT. (Pl.'s MSJ 6:21–10:10, ECF No. 110). SFR responds that a homeowner cannot, as a matter of law, satisfy an HOA superpriority lien.[3] (SFR's Resp. to Pl.'s MSJ 9:8–16:26, ECF No. 122). With respect to Plaintiff's tender, SFR asserts that the tender letter contained impermissible conditions and, therefore, Red Rock's rejection was in good faith. (*Id.* 4:1–26, 19:20–24:13).

"[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 70501, 2018 WL 4403296, at *1 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at *3. In addition to a full

---

[3] The Nevada Supreme Court recently held that a homeowner's tender of the full superpriority amount may discharge an HOA's superpriority lien. *See Saticoy Bay LLC v. JPMorgan Chase Bank*, No. 71246, 408 P.3d 558, 2017 WL 6597154, at *1 (Nev. 2017) (unpublished). In that case, there was "undisputed evidence that the former homeowner made payments sufficient to satisfy the superpriority component of the HOA's lien and that the HOA applied those payments to the superpriority component of the former homeowner's outstanding balance." *Id.* Here, however, the Court need not consider whether that holding impacts the instant case as the Court finds that Plaintiff unconditionally tendered HOA's superpriority lien.

tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on May 7, 2014, Plaintiff sent a check for $387.00 to Red Rock, which Red Rock received.[4] (*See* Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. C to Pl.'s MSJ, ECF No. 110-3); (*see also* Burden Dep. 44:23–45:2, Ex. B to Pl.'s MSJ, ECF No. 110-2). This figure represents assessments at a rate of $43.00 per month applied to the nine months preceding HOA's institution of the foreclosure action. (*See* Accounting Ledger, Ex. 2 to Miles Bauer Aff. at 19–23, Ex. C to Pl.'s MSJ); *see also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, 388 P.3d 226, 231 (Nev. 2017) (recognizing under the pre-2015 version of NRS 116.3116 that serving a notice of delinquent assessments constitutes institution of an action to enforce the lien). The accounting ledger indicates that during the relevant nine-month period, there were no charges for maintenance or nuisance abatement. (*See* Accounting Ledger, Ex. 2 to Miles Bauer Aff. at 11–12). Therefore, to protect its interest in the Property, Plaintiff only had to tender nine-months worth of unpaid assessments, which it did. The Court thus turns to whether Plaintiff's tender was unconditional, or with conditions on which Plaintiff had a right to insist. *See Bank of Am., NA.*, 2018 WL 4403296, at *3.

The relevant language in the tender letter provides:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Plaintiff's] financial obligations towards the HOA in regard to the [Property] have now been "paid in full."

---

[4] The Court rejects SFR's argument that Plaintiff fails to put forth admissible evidence to establish the check was sent and received. (SFR's Resp. 19:20–21:8). Red Rock's 30(b)(6) designee acknowledged receipt of the check and Red Rock admitted to the same in its response to Plaintiff's Requests for Admission. (*See* Burden Dep. 44:23–45:2, Ex. B to Pl.'s MSJ, ECF No. 110-2); (Red Rock's Resp. to Pl.'s Requests for Admission 9:15–26, Ex C. to Pl.'s Reply, ECF No. 127-3).

> Please note, however, that any rejection on your part of said tender of the Super-Priority Amount will be construed as a waiver of any right by you, your client or any subsequent purchaser of the subject property at an HOA foreclosure sale to claim our client's lien was wiped out at said HOA sale. Additionally, please be advised that my client may also seeks attorney's fees and costs for any litigation caused by your improper rejection of any payoff tender made pursuant to the Real Estate Division's Advisory Opinion.

(Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. C to Pl.'s MSJ, ECF No. 110-3).

SFR argues that this language imposes conditions and, therefore, whether Plaintiff validly tendered the superpriority amount constitutes a disputed material fact. (*See* SFR's Resp. to Pl.'s MSJ 4:1–26, ECF No. 122). Specifically, SFR asserts the following arguments to establish the invalidity of Plaintiff's tender: (1) acceptance of the tender was contingent upon agreement with the facts as stated in the tender letter; (2) the letter provides for a waiver of certain legal rights; (3) and the check's description indicated that it was for "HOA Fees and Assessments." (*Id.*) Additionally, SFR and Red Rock contend that even if the tender was valid, Red Rock rejected the tender in good faith. (*Id.* 22:19–24:13); (Red Rock's Resp. to Pl.'s MSJ 4:1–6:9, ECF No. 121).

At the outset, the Court notes that one of the purportedly improper paragraphs in the letter, quoted *supra*, is identical to the letter the Nevada Supreme Court deemed unconditional and otherwise valid.[5] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the facts within the letter, the Court

---

[5] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 2018 WL 4403296, at *2.

incorporates the reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which Plaintiff had the right to insist. *Bank of Am., NA.*, 2018 WL 4403296, at *3.

SFR argues, however, that this condition is "especially egregious" because Plaintiff "does not even acknowledge that an association has a superpriority portion of its lien for any amounts that constitute abatement charges." (*See* SRF's Resp. 21:25–22:2). According to SFR, because the letter excludes relevant language "without indicating the language has been deleted," the condition that endorsement would constitute acceptance of the facts in the letter is impermissible. (*Id.* 22:7–17). The Court preliminarily notes that other courts in this District have considered virtually identical language and nonetheless concluded that the tenders were valid and unconditional. *See, e.g.*, *Bank of Am., N.A. v. Toscano River Townhomes Ass'n, Inc.*, No. 3:16-cv-00196-RCJ-VPC, 2017 WL 2259985, at *3 (D. Nev. May 23, 2017) (Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. 6 to MSJ, ECF No. 30-6); *U.S. Bank, N.A. v. Emerald Ridge Landscape Maint. Ass'n*, No. 2:15-cv-00117-MMD-PAL, 2016 WL 7826665, at *3 (D. Nev. Sept. 30, 2016) (Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 40-8).

Moreover, in this case, because Red Rock's accounting ledger shows that maintenance and abatement charges were not incurred during the relevant nine-month time period, acceptance of the letter's facts in this regard would not "force the [HOA] to waive a portion of its superpriority lien," as SFR argues. (SFR's Resp. 22:13–14, ECF No. 122). On this point, SFR contends that it is irrelevant whether abatement charges were assessed because these charges "can arise at any time during the delinquency process," and such charges are "are not temporally limited." (*Id.* 22:12 n.10). Contrary to SFR's assertion, however, an HOA's superpriority lien applies exclusively to the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges. *Prop. Plus Invs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 401 P.3d 728, 730 (Nev. 2017). Therefore, new charges would not

factor into an HOA's superpriority lien absent a new notice of delinquent assessments. *See Saticoy Bay LLC v. JPMorgan Chase Bank*, 408 P.3d 558 (Nev. 2017) (unpublished).

Next, SFR asserts that the letter's language stating that rejection would be "construed as a waiver of any right . . . to claim our client's lien was wiped out at the foreclosure sale," renders the tender conditional. (SFR's Resp. 4:13–15, ECF No. 122). SFR continues that this provision makes it "virtually impossible for the Association/Agent to accept or reject any conditions [Plaintiff] opined were appropriate without purportedly waiving other legal rights." (*Id.*). The Court disagrees.

This provision does not require that HOA or SFR waive any rights in the event of acceptance. Instead, the language contemplates action Plaintiff would take in the event of rejection. The courts in this District that have considered the same language have concluded that the tender letter "simply delineated how the tenderer would interpret the actions of the recipient." *See, e.g.*, *Bank of Am., N.A. v. Toscano River Townhomes Ass'n*, No. 3:16-cv-00196-RCJ-VPC, 2017 WL 2259985, at *3 (Tender Letter, Ex. 3 to Miles Bauer Decl., Ex. 6 to MSJ, ECF No. 30-6). The Court is in accord with this authority and therefore finds that this clause does not constitute a condition to acceptance.

SFR also argues that the tender was invalid because "the check specifically indicated in its description that it was for 'HOA Fees and Assessments,' while it only purported to pay a small portion of the Assessments and no fees." (SFR's Resp. 4:18–19). As noted *supra*, the evidence shows that Plaintiff tendered at least nine-months worth of monthly assessments, and that no maintenance and abatement fees were due to satisfy HOA's superpriority lien. Regardless, it is unclear why the addition of the word "fees" in the check's description would invalidate the tender, particularly given that the check was enclosed with a letter that undisputedly specified the amount was limited to monthly assessments.

Lastly, Red Rock and SFR argue that the rejection of Plaintiff's tender was in good faith. (SFR's Resp. 22:19–24:13); (Red Rock's Resp. to Pl.'s MSJ 4:1–6:9, ECF No. 121). Red Rock asserts that rejection was reasonable because it believed that "no super-priority lien existed and [Plaintiff's] offer was insufficient to cover the full lien," and that HOA and Red Rock had a right to include collection costs in the superpriority lien. (Red Rock's Resp. 6:1–9). In support, Red Rock notes that Nevada law with respect to non-judicial HOA foreclosures was in complete disarray at the time Red Rock received the tender. (*Id.* 6:10–7:12). SFR similarly asserts that during the relevant time period, "whether a lender had to pay nine months assessments plus collection costs to protect its deed of trust was still open to interpretation." (SFR's Resp. 23:8–10). SFR continues that because the tender letter required HOA to admit nothing more was due, the rejection was reasonable given the nebulous status of Nevada law. (*Id.* 23:5–15).

The Court finds these contentions unpersuasive. Responding to this same line of argument, the Nevada Supreme Court stated "a plain reading of NRS 116.3116 indicates that at the time of Bank of America's [2012] tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, the issue was not undecided." *Bank of Am., N.A.*, 2018 WL 4403296, at *3 (Nev. 2018). In a prior opinion, the Nevada Supreme Court arrived at the same conclusion explaining "we are not persuaded that this was a justifiable basis [for rejection] in light of the explanations contained in the letters sent by [plaintiff's] agent setting forth [plaintiff's] legal position." *BAC Homes Loans Servicing, LP v. Aspinwall Court Tr.*, No. 69885, 422 P.3d 709, 2018 WL 3544962, at *1 (Nev. July 20, 2018) (unpublished).

Based upon this authority, the Court finds that the purported unsettled nature of Nevada law during the relevant time period does not establish sufficient justification for rejection of Plaintiff's tender. This conclusion is further bolstered by the fact that Plaintiff's tender letter,

as well as the preceding letter requesting an accounting, provided explanation of Plaintiff's legal position, as well as citations to pertinent statutory authority. (*See* Accounting Request, Ex. 1 to Miles Bauer Aff., Ex. C to Pl.'s MSJ, ECF No. 110-3); (*see also* Tender Letter, Ex. 3 to Miles Bauer Aff.).

In summary, the Court rejects SFR's arguments that the tender letter was impermissibly conditional or otherwise invalid. The Court further finds that Plaintiff tendered the superpriority amount and to the extent the tender was conditional, the conditions were limited to those on which Plaintiff had the right to insist.

### C. SFR's Status as a Bona Fide Purchaser

Because Plaintiff validly tendered the HOA superpriority lien, SFR cannot prevail even if the Court were to find that SFR was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 70501, 2018 WL 4403296, at *6 (Nev. 2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of Plaintiff's unconditional tender, SFR's status as a bona fide purchaser is immaterial.[6]

In light of the foregoing, the Court concludes that Plaintiff's unconditional tender of the superpriority amount satisfied HOA's superpriority lien and, therefore, Plaintiff's senior DOT survived the foreclosure sale. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on its quiet title claim and holds that Plaintiff's DOT continues to encumber the Property.

---

[6] With respect to SFR's insistence that Plaintiff was required to record its tender to protect its interest from bona fide purchasers, (*see* SFR's Resp. 24:15–26:15), the Nevada Supreme Court has expressly rejected this argument as well. *See Bank of Am., N.A.*, 2018 WL 4403296, at *4–5.

### D. Plaintiff's Remaining Claims for Violation of NRS § 116.1113, Wrongful Foreclosure, and Injunctive Relief

In its prayer for relief, Plaintiff requests primarily an "order declaring SFR purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 15:3–4). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.* 15:4–13). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. Accordingly, the Court dismisses Plaintiff's second and third causes of action as moot.

With regard to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

### E. SFR's Claim Against Borrowers

SFR seeks summary judgment on its quiet title claim against Borrowers on the basis that through its purchase of the Property, "it obtained title of the unit's owner without equity or right of redemption." (SFR's MSJ 24:7–8, ECF No. 117). Because the Court holds the sale remains intact, and given SFR's evidence of its interest in the Property relative to that of Borrowers', SFR's Motion against Borrowers is granted to the extent Borrowers assert any adverse interest in the Property.[7] *See Deutsche Bank Nat'l Tr. Co. v. Foothills at S. Highlands Homeowners Ass'n*, No. 2:16-cv-00245-GMN-PAL, 2018 WL 3613984, at *5 (D. Nev. July 27, 2018).

///

///

///

---

[7] As Borrowers have not appeared in this action, SFR has moved for clerk's entry of default, (ECF Nos. 114, 115), which the clerk of court subsequently entered on June 19, 2018, (*see* ECF No. 116).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Second Motion for Summary Judgment, (ECF No. 110), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that SFR's Second Motion for Summary Judgment, (ECF No. 117), is **GRANTED in part** and **DENIED in part**. SFR's Motion is granted only with respect to its crossclaim for quiet title against Borrowers.

**IT IS FURTHER ORDERED** that Plaintiff and SFR's prior Motions for Partial Summary Judgment, (ECF Nos. 65, 68), are **DENIED.**

**IT IS FURTHER ORDERED** that SFR's Motion for Relief, (ECF No. 77), is **DENIED as moot**.

**DATED** this __28__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge